**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF FLORIDA**
**TALLAHASSEE DIVISION**

**ALAN MCVEIGH,** **CASE NO.**

**Plaintiff,**

**v.**

**ALEX KELLY,** in his official capacity as Secretary of the Florida Department of Commerce,

**Defendant.**
_________________________________/

**COMPLAINT**

Plaintiff, ALAN MCVEIGH, hereby sues Defendant, ALEX KELLY, in his official capacity, as Secretary of the Florida Department of Commerce, and alleges:

**NATURE OF THE ACTION**

1. This is an action brought under 42 U.S.C. §1983, which authorizes actions to redress the deprivation, under color of state law, of rights, privileges, and immunities secured to Plaintiff by the Constitution and laws of the United States, under 42 U.S.C. §1988, which authorizes the award of costs and attorney's fees to prevailing plaintiffs in actions brought under 42 U.S.C. §1983.

2. This action involves claims which are, individually, in excess of Seventy-Five Thousand Dollars ($75,000.00), exclusive of costs and interest.

## THE PARTIES

3. At all times pertinent hereto, Plaintiff, ALAN MCVEIGH, has been a resident of the State of Florida. He is *sui juris*.

4. At all times pertinent hereto, Defendant, ALEX KELLY, in his official capacity as Secretary of the Florida Department of Commerce, was organized and existing under the laws of Florida and is a Stage Agency in the state of Florida and subject to the jurisdiction of this Court.

## CONDITIONS PRECEDENT

5. Plaintiff has satisfied all conditions precedent to bringing this action, if any.

## STATEMENT OF THE ULTIMATE FACTS

6. Plaintiff began employment with Defendant in the Budget Department on or about April 8, 2024, as a Financial Administrator until his wrongful termination on September 15, 2025.

7. Prior to joining Florida Commerce, Plaintiff worked for approximately six and one-half years in the Department of Highway Safety and Motor Vehicles ("DHSMV") in both the Human Resources (HR) and Budget Departments.

8. Plaintiff's former Budget Manager at DHSMV, Janis Timmons, was later transferred to Defendant and personally requested that Plaintiff transfer to join

her there. Plaintiff accepted the opportunity and began employment in good standing in or around April 2024.

9. Throughout Plaintiff's tenure with Defendant, he performed his duties with excellence. He received two formal performance evaluations, one rating of 4.66/5 ("Outstanding") and a second rating of 4.80/5 ("Outstanding"), reflecting his exceptional work performance and professional conduct.

10. On or around September 10, 2025, conservative commentator Charlie Kirk was killed. Following widespread national discussions surrounding the event, Plaintiff, while off duty and on his personal time, exercised his rights as a private citizen by posting commentary on his personal private Instagram account and personal private Facebook accounts, neither of which is affiliated with or managed by Defendant.

11. Between September 10, 2025, and September 11, 2025, Plaintiff posted a photograph of one of Kirk's quotes regarding the Second Amendment on his personal private Instagram account, accompanied by a caption reading in part: "At least this racist just didn't get a nicked ear. Where were all the good guys with guns though? THOUGHTS AND PRAYERS. LET'S NOT MAKE THIS POLITICAL etc." This statement was a form of social and political commentary criticizing ongoing gun violence and hypocrisy in public discourse, not a statement made in connection with Plaintiff's job duties or employment. The body of the

Instagram post, under a user name that did not identifying Plaintiff by his real name, is as follows.




12. Plaintiff also changed his Facebook cover photo to a graphic reading: "Not the American government asking us not to wish death on people." This post was likewise made in his personal capacity as a citizen and reflected his views on issues of public concern, including gun control, political hypocrisy, and government accountability.

13. On or around September 11, 2025, an acquaintance texted Plaintiff, accusing him of "wishing death" on individuals who shared Kirk's beliefs. Plaintiff denied this interpretation and stood by his right to express personal opinions on political matters. Plaintiff believes that this acquaintance or someone acting on his behalf reported Plaintiff's social media activity to his employer.

14. Between September 12, 2025, and September 13, 2025, after reflection, Plaintiff voluntarily edited his Instagram post to remove one sentence for tone but otherwise left the message and image intact.

15. On September 15, 2025, at approximately 4:50 p.m., Plaintiff was summoned without prior notice to a meeting with Defendant's Deputy Head of Human Resources (HR), Derrick Elias. Elias, known within the department for conducting termination meetings, instructed Plaintiff to close the door and sit down.

16. Elias told Plaintiff, "You know what I do in here, and what my reputation is, right?" He then handed Plaintiff a termination letter and stated, "Something to do with Charlie Kirk… a post you made or something like that." This was the first notice Plaintiff received that his personal social media activity was being used as grounds for termination.

17. Plaintiff expressed shock and confusion, asking if he could speak to another HR manager, the Agency Head, or the Deputy Secretary. Elias refused and instead escorted Plaintiff off the premises, confiscating his security badge.

18. Plaintiff immediately contacted his Budget Manager, Timmons, who met him outside the building. Timmons stated that she and her supervisor, Chief Financial Officer Caroline "Tisha" Womack, had just learned of the termination and were horrified by the decision, expressing disbelief at what had occurred.

19. On or around September 17, 2025, Plaintiff discovered an unauthorized Instagram account impersonating "Florida Commerce," which contained two posts directly referencing Plaintiff. The posts displayed screenshots of Plaintiff's Facebook cover photo, his Instagram post, and his LinkedIn profile, along with what appeared to be a copy of the email or message sent to Defendant reporting his posts. Consequently, internet searches of Plaintiff's name result in links to this fake account's post, potentially affecting his reputation and future employment opportunities.

20. Plaintiff strongly believes that the acquaintance that contacted him on September 11, 2025, or his associates, were involved in reporting his private political posts to Defendant and that this fabricated account and report prompted HR to retaliate against him for his speech.

21. At all relevant times, Plaintiff's posts and comments were made as a private citizen, not as part of his official duties, and addressed matters of public concern, including free speech, gun violence, and government hypocrisy.

22. Defendant's decision to terminate Plaintiff's employment solely because of his lawful, off-duty political expression constitutes retaliation in violation of the First Amendment to the U.S. Constitution and Article I, Section 4 of the Florida Constitution, which guarantee public employees the right to speak as citizens on matters of public concern without fear of government reprisal.

23. Plaintiff has retained the undersigned to represent his interests in this cause and is obligated to pay a fee for these services. Defendant should be made to pay said fee under the laws referenced above.

## COUNT I
## First Amendment Violation – Retaliation

24. Plaintiff realleges the facts set forth in Paragraphs 1 through 23 and incorporates those facts into this Count by reference.

25. This is an action for declaratory relief and injunctive relief brought by the Plaintiff against Defendant under this Court's general jurisdiction and pursuant to 28 U.S.C. § 2201 and 42 U.S.C. § 1983.

26. Plaintiff is uncertain as to his rights and remedies following the termination of his employment in apparent violation of the First Amendment to the United States Constitution.

27. In posting the political comment concerning the death of Mr. Kirk, Plaintiff spoke as a private citizen.

28. Plaintiff's comments concerning the death of Mr. Kirk addressed matters of public concern.

29. Defendant took adverse action against Plaintiff — specifically his discharge from employment and other tangible benefits including wages.

30. Defendant had the actual authority to bring disciplinary charges against Plaintiff, including his discharge from employment.

31. The termination notice ordered by Defendant gave effect to and implemented the disciplinary action against Plaintiff.

32. Defendant's actions directly deprived Plaintiff of his First Amendment rights.

33. Defendant's adverse action was in direct response to Plaintiff's protected political speech.

34. Plaintiff's political post was the motivating factor in Defendant's decision to take retaliatory action against Plaintiff. Defendant immediately terminated Plaintiff because of his private political comments on a matter of public importance.

35. Defendant's response to Plaintiff's expression was sufficient to deter a person of ordinary firmness from continuing to engage in expressive activity.

36. Defendant's actions have chilled Plaintiff's speech.

37. Defendant's actions were based on its objections to the content of Plaintiff's speech and the particular viewpoint expressed, all in direct retaliation for Plaintiff's speech.

38. Defendant's decision to terminate Plaintiff's employment was motivated by its opposition to Plaintiff's viewpoint, which was conveyed at the time of his wrongful termination when Elais stated to him that the cause of his

termination had "something to do with Charlie Kirk… a post you made or something like that."

39. Plaintiff is likely to succeed on the merits of his claims.

WHEREFORE, Plaintiff prays for the following relief:

A. That this Court take jurisdiction over the parties and this cause;

B. That this Court enter a judgment declaring that Defendant's decision to terminate Plaintiff's employment violated the First Amendment because it was content-based;

C. That this Court enter a judgment declaring that Defendant's decision to terminate Plaintiff's employment violated the First Amendment because it was viewpoint-based;

D. That this Court enter a preliminary and permanent injunction reinstating Plaintiff's employment and restoring Plaintiff to his associated position and responsibilities;

E. That this Court enter a preliminary and permanent injunction forever enjoining Defendant and the various agents and employees of Defendant from disciplining Plaintiff in the future for posting the specific political statement at the center of this lawsuit in the exercise of his First Amendment rights;

F. That this Court enter a judgment for benefits and credit for job

seniority for any time after Defendant ceased to pay Plaintiff;

G. That this Court enter a judgment for front pay in the event reinstatement is not granted;

H. That this Court enter a judgment for pre-judgment and post-judgment interest at the highest lawful rate;

I. That this Court award Plaintiff nominal damages;

J. That this Court award Plaintiff his recoverable costs and reasonable attorney's fees pursuant to 42 U.S.C. § 1988; and

K. That this Court award Plaintiff all other relief in law and in equity to which he may be entitled.

**<u>COUNT II</u>**

**First Amendment Violation - Content and Viewpoint Discrimination**

40. Plaintiff realleges the facts set forth in Paragraphs 1 through 23 and incorporates those facts into this Count by reference.

41. This is an action for declaratory relief and injunctive relief brought by the Plaintiff against Defendant under this Court's general jurisdiction and pursuant to 28 U.S.C. § 2201 and 42 U.S.C. § 1983.

42. Plaintiff is uncertain as to his rights and remedies following the termination of his employment in apparent violation of the First Amendment to the United States Constitution.

43. In posting the political comment concerning the death of Mr. Kirk, Plaintiff spoke as a private citizen.

44. Plaintiff's comments concerning the death of Mr. Kirk addressed matters of public concern.

45. Plaintiff's interest in speaking as a private citizen on matters of public concern necessarily outweighs Defendants' interests in advancing content- or viewpoint-discrimination.

46. Plaintiff's interest in speaking as a private citizen on matters of public concern outweighs Defendants' interest in content and viewpoint discrimination or imposing a heckler's veto.

47. Defendant terminated Plaintiff's employment because of their opposition to the content of Plaintiff's political statement, or because of public reactions to Plaintiff's message, or both.

48. Defendant never asserted that Plaintiff's political speech would upset their orderly operations, nor were such disruptions reasonably foreseeable given the limited publication of Plaintiff's private speech, the lack of knowledge by his co-workers, Plaintiff's position and job responsibilities, and the content of Plaintiff's speech.

49. Plaintiff's speech did not, in fact, disrupt Defendant's operations.

50. Public reaction to speech is never a content-neutral basis for regulation. A heckler's veto is a viewpoint-based limitation on expression and is impermissible under the First Amendment.

51. The First Amendment prohibits government officials from discriminating against speech "based on the ideas or opinions it conveys." Iancu v. Brunetti, 139 S. Ct. 2294, 2299 (2019). Viewpoint discrimination is an "egregious form of content discrimination" and is "presumptively unconstitutional." Rosenberger v. Rector & Visitors of Univ. of Va., 515 U.S. 819, 829–30 (1995).

52. Defendant's decision to terminate Plaintiff's employment is the product of viewpoint discrimination and is in retaliation for Plaintiff's speech.

53. Defendant's decision to terminate Plaintiff's employment was motivated by their opposition to Plaintiff's viewpoint, which Defendant conveyed at the time of his wrongful termination when Elias stated to him the cause of his termination had "something to do with Charlie Kirk… a post you made or something like that."

54. Plaintiff is likely to succeed on the merits of his claims.

WHEREFORE, Plaintiff prays for the following relief:

A. That this Court take jurisdiction over the parties and this cause;

B. That this Court enter a judgment declaring that Defendant's decision to terminate Plaintiff's employment violated the First Amendment

because it was content-based;

C. That this Court enter a judgment declaring that Defendant's decision to terminate Plaintiff's employment violated the First Amendment because it was viewpoint-based;

D. That this Court enter a preliminary and permanent injunction reinstating Plaintiff's employment and restoring Plaintiff to his associated position and responsibilities;

E. That this Court enter a preliminary and permanent injunction forever enjoining Defendant and the various agents and employees of Defendant from disciplining in the future Plaintiff for posting the specific political statement at the center of this lawsuit in the exercise of his First Amendment rights;

F. That this Court enter a judgment for benefits and credit for job seniority for any time after the Defendant ceased to pay Plaintiff;

G. That this Court enter a judgment for front pay in the event reinstatement is not granted;

H. That this Court enter a judgment for pre-judgment and post-judgment interest at the highest lawful rate;

I. That this Court award Plaintiff nominal damages;

J. That this Court award Plaintiff his recoverable costs and

reasonable attorney’s fees pursuant to 42 U.S.C. § 1988; and

K. That this Court award Plaintiff all other relief in law and in equity to which he may be entitled.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demands judgment against Defendant for the following:

(a) that process issue and this Court take jurisdiction over this case;

(b) that this Court grant equitable relief against Defendant under the applicable counts set forth above, mandating Defendant’s obedience to the laws enumerated herein and providing other equitable relief to Plaintiff;

(c) enter judgment against Defendant and for Plaintiff awarding all legally-available general and compensatory damages and economic loss to Plaintiff from Defendant for Defendant’s violations of law enumerated herein;

(d) enter judgment against Defendant and for Plaintiff permanently enjoining Defendant from future violations of law enumerated herein;

(e) enter judgment against Defendant and for Plaintiff awarding Plaintiff attorney's fees and costs;

(f) award Plaintiff interest where appropriate; and,

(g) grant such other further relief as being just and proper under the circumstances.

**DEMAND FOR TRIAL BY JURY**

Plaintiff hereby demands a trial by jury on all issues herein that are so triable.

Dated this 24th day of November, 2025.

Respectfully submitted,

/s/ Marie A. Mattox
Marie A. Mattox [FBN 0739685]
MARIE A. MATTOX, P.A.
203 North Gadsden Street
Tallahassee, FL 32301
Telephone: (850) 383-4800
Facsimile: (850) 383-4801
marie@mattoxlaw.com
ATTORNEYS FOR PLAINTIFF