**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION**

**ALAN MCVEIGH,**

    **Plaintiff,**

**v.**                                   **Case No. 4:25-cv-486-AW-MAF**

**ALEX KELLY, in his official capacity
as Secretary of the Florida Department
of Commerce,**

    **Defendant.**

_____/

**ORDER GRANTING IN PART AND
DENYING IN PART MOTION TO DISMISS**

Plaintiff Alan McVeigh sued the Florida Department of Commerce, alleging First Amendment retaliation. He claims the Department fired him based on comments he made about Charlie Kirk's assassination. ECF No. 15. The Department has moved to dismiss. ECF No. 19. After careful review, I now grant the motion in part and deny it in part.

**I.**

The facts come from the complaint, and at this stage I accept all well-pleaded factual allegations as true.

McVeigh worked for the Department as a financial administrator. ECF No. 15 ¶ 6 (FAC). Shortly after Charlie Kirk's assassination, McVeigh posted a photograph of Kirk on his private Instagram account with the caption, "At least this racist just didn't get a nicked ear. Where were all the good guys with guns though?

1

THOUGHTS AND PRAYERS. LET'S NOT MAKE THIS POLITICAL etc." *Id.* ¶ 11. Only McVeigh's friends could access the private Instagram account, which did not identify McVeigh or his employer. *Id.* ¶¶ 11-12, 15.

McVeigh also changed his Facebook photo to a graphic that read, "Not the American government asking us not to wish death on people." *Id.* ¶ 13. This photo was not private and was visible to any Internet user. *Id.* ¶ 14. But like the initial Instagram post, this Facebook account did not identify the Department as McVeigh's employer. *Id.* ¶ 15.

At some point, an acquaintance texted McVeigh about the posts, accusing McVeigh of "wishing death" on "individuals who shared Kirk's beliefs." *Id.* ¶ 16. After reflection, McVeigh edited his post "to remove one sentence for tone." *Id.* ¶ 17.

On September 15—five days after the assassination—McVeigh received a termination letter from HR. *Id.* ¶¶ 18-19. The HR officer told him it had "[s]omething to do with Charlie Kirk . . . a post you made or something like that." *Id.* ¶ 19. A few days later, McVeigh discovered an Instagram account showing his Facebook photo, Instagram post, and LinkedIn profile. *Id.* ¶ 22. The post also included a copy of a communication sent to the Department about McVeigh's posts. *Id.* (McVeigh believes the acquaintance reported his posts to the Department. *Id.* ¶ 16.)

## II.

McVeigh seeks a declaration that his termination was unlawful, and he seeks an injunction requiring his reinstatement. He also seeks compensatory damages. *Id*. at 16.

## A.

First, the Department correctly argues that it is not a "person" under § 1983 and that it enjoys Eleventh Amendment immunity. ECF No. 19 at 4-5. McVeigh offers no meaningful contrary argument. He sued the Secretary in his official capacity, which is tantamount to suing the State. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). And "neither a State nor its officials acting in their official capacities are 'persons' under § 1983." *Id*. Moreover, the State has Eleventh Amendment immunity. *See Grizzle v. Kemp*, 634 F.3d 1314, 1319 (11th Cir. 2011) ("Pursuant to the Eleventh Amendment, a state may not be sued in federal court unless it waives its sovereign immunity or its immunity is abrogated . . . .").

The takeaway is that McVeigh cannot pursue any claim for damages or other retrospective relief. He seems to acknowledge this. *See* ECF No. 20 at 3 (conceding that "certain monetary claims against a state entity may be barred"). But this does not preclude a claim for injunctive or other prospective relief. Under the *Ex parte Young* doctrine, "a suit alleging a violation of the federal constitution against a state official in his official capacity for injunctive relief on a prospective basis is not a suit

3

against the state, and, accordingly, does not violate the Eleventh Amendment." *Grizzle*, 634 F.3d at 1319. Similarly, a state official sued in his official capacity for prospective relief is considered a "person" under § 1983. *Will*, 491 U.S. at 71 n.10 (marks omitted). Thus, the Secretary is a proper defendant for a claim seeking prospective relief, and the Eleventh Amendment does not bar such a claim.

**B.**

As to the claim for prospective relief, the Department argues McVeigh has failed to state a claim. To survive dismissal, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible if "well-pleaded facts . . . permit the court to infer more than the mere possibility of misconduct." *Id.* at 679. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678.

To succeed on his claim, McVeigh must show (1) that his posts were made as a private citizen and "involved a matter of public concern"; (2) that his "free speech interests outweighed the employer's interest in effective and efficient fulfillment of its responsibilities [i.e., the *Pickering* balance]"; and (3) that his posts caused his termination. *Alves v. Bd. of Regents of the Univ. Sys. of Ga.*, 804 F.3d 1149, 1159

4

n.4 (11th Cir. 2015) (alteration in original) (quoting *Cook v. Gwinnett Cnty. Sch. Dist.*, 414 F.3d 1313, 1318 (11th Cir. 2005)).

While the Department says it does not concede any element, it focuses solely on the second one—the *Pickering* balancing. ECF No. 19 at 8. Because the Department advances no argument as to the first or third elements, I will assume McVeigh has pleaded enough to satisfy them. The question, then, is whether McVeigh alleged sufficient facts that could plausibly survive *Pickering* balancing.

"The *Pickering* test seeks to arrive at a balance between the employee's interest in commenting on matters of public concern and his employer's interest in efficiently providing public services." *Moss v. City of Pembroke Pines*, 782 F.3d 613, 621 (11th Cir. 2015); *see also Pickering v. Bd. of Educ.*, 391 U.S. 563 (1968). In balancing these interests, courts consider "(1) whether the speech at issue impedes the government's ability to perform its duties efficiently, (2) the manner, time and place of the speech, and (3) the context within which the speech was made." *Martinez v. City of Opa-Locka*, 971 F.2d 708, 712 (11th Cir. 1992).

The *Pickering* balancing can be fact intensive, *see Maggio v. Sipple*, 211 F.3d 1346, 1354 (11th Cir. 2000); *cf. also Rankin v. McPherson*, 483 U.S. 378, 384 (1987), and in many cases cannot be resolved at the motion-to-dismiss stage. Still, a plaintiff must allege sufficient facts to allow the court to draw the inference that he could survive the balancing. *See Biro v. City of Tallahassee*, 2024 WL 892640, at

*1 (N.D. Fla. Feb. 6, 2024) (dismissing claim under Rule 12(b)(6) because plaintiff "failed to plausibly allege that her First Amendment interests outweigh the City's interest in efficiently carrying out its business"), *aff'd,* 2025 WL 1068229 (11th Cir. Apr. 9, 2025). Here, drawing all reasonable inferences in McVeigh's favor, I conclude he has alleged enough.

The Department cites its "legitimate interest in avoiding disruption," and suggests McVeigh's posts were disruptive. ECF No. 19 at 9 (quoting *Snipes v. Volusia County*, 704 F. App'x 848, 852 (11th Cir. 2017)). But McVeigh has alleged a complete lack of disruption. *See, e.g.*, FAC ¶¶ 26-27. The Department calls this a boilerplate allegation, but McVeigh offers more than that. *See id*. ¶ 26 ("Not one person within Defendant said anything to Plaintiff about his post prior to minutes before he was fired . . . . Plaintiff actually worked the entire weekend after the posts with no one saying anything about the posts and there was not one comment, criticism or other indication that there was a problem with the posts until he was terminated.").

As to context, the Department points to "the realities of political and workplace violence that permeate the nation." ECF No. 19 at 10. It also points to McVeigh's choice to post his views on social media, which can reach wide audiences. But at this stage, where I must draw all reasonable inferences in McVeigh's favor, I cannot conclude McVeigh was advocating for workplace

violence or threatening coworkers (or anyone). And I cannot conclude that the fact that social media was involved necessarily weighs in the Department's favor on the balancing. McVeigh alleges that neither post referenced his employment and that one was private and did not use his real name. At this stage, I cannot assume otherwise. Nor can I assume the posts were widely viewed, even if they were on social media.

This case is unlike *Biro*, in which the complaint's allegations showed the speech was "an impediment to the effectiveness of the" government entity. *Biro v. City of Tallahassee*, 2025 WL 1068229, at *5 (11th Cir. Apr. 9, 2025). Unlike the board member in *Biro*, McVeigh has not alleged a public-facing role; he works in the budget department. Nor has he alleged any role where an "appearance of bias" on a particular issue (or specifically relating to Charlie Kirk) would be important. *Cf. Shahar v. Bowers*, 114 F.3d 1097, 1103-04 (11th Cir. 1997) (stating that an employer's "interest in staffing its offices with persons the employer fully trusts is given great weight when the pertinent employee helps make policy, handles confidential information or must speak or act—for others to see—on the employer's behalf").

The Department may ultimately prevail. Indeed, "the State has interests as an employer in regulating the speech of its employees that differ significantly from those it possesses in connection with regulation of the speech of the citizenry in

general." *Pickering*, 391 U.S. at 568. But at the Rule 12(b)(6) stage, McVeigh has done enough.

### CONCLUSION

The Department's motion to dismiss (ECF No. 19) is GRANTED in part and DENIED in part. McVeigh's claims for damages are dismissed. The case will proceed as to McVeigh's claims for declaratory and injunctive relief.

The parties may begin discovery. A scheduling order will issue separately.

SO ORDERED on April 15, 2026.

s/ *Allen Winsor*
Chief United States District Judge

8